**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DISH DBS CORPORATION,<br>DISH WIRELESS L.L.C., *et al.*,[1] | ) | Case No. 26-90627 (CML) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 1346** |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' STATEMENT REGARDING (I) THE DBS DEBTORS' PLAN CONFIRMATION SCHEDULE AND (II) THE STATUS OF THE DISH WIRELESS DEBTORS' CHAPTER 11 PLAN AND CERTAIN CONTESTED MATTERS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby submits this response (the "Response") to the *Debtors' Statement Regarding (I) The DBS Debtors' Plan Confirmation Schedule and (II) the Status of the DISH Wireless Debtors' Chapter 11 Plan and Certain Contested Matters* [Docket No. 1346] (the "Statement").[2] In support of this Response, the Committee respectfully submits as follows:

**RESPONSE**

1. On September 4, the Debtors filed the Statement whereby they purported to, among

[1] The last four digits of DISH DBS Corporation's and DISH Wireless L.L.C.'s respective tax identification numbers are 8967 and 6388. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/DBS. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the *Objection of the Official Committee of Unsecured Creditors to the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of White & Case LLP as Attorneys for the Debtors Effective as of the Petition Date* [Docket No. 1357] (the "White & Case Retention Objection").

other things, "apprise the Court and parties in interest of . . . the status of the DISH Wireless Debtors' chapter 11 plan and certain contested matters."[3] The Debtors go on to state that, "[c]onsidering the DISH Wireless Debtors' constrained liquidity, the DISH Wireless Debtors and [the Special Committee] have determined to temporarily defer the filing of a further-modified DISH Wireless-only chapter 11 plan . . . ."[4] Finally, the Debtors note that they are deferring the plan process for the DISH Wireless Debtors, *with the support of the Special Committee*, to explore a "potential global resolution"—during which time the Debtors and the Special Committee "also favor" pausing all discovery and briefing regarding the Committee's Boost Standing Motion and the pending matters filed in respect of the Intercompany Loan Claim.[5] Conspicuously absent from this "pause" is any mention of the affirmative and extremely costly litigation the DISH Wireless Debtors seek to pursue against their three largest creditors, Crown Castle, American Tower and SBA (collectively, the "Tower Claimants").[6]

2. Stated differently, the DISH Wireless Debtors and their Special Committee have come to the inevitable conclusion that their collective actions to date—devised and implemented by the Debtors' conflicted proposed lead restructuring counsel, White & Case[7]—have led these cases to the brink of administrative insolvency and cannot be sustained. These actions include, as to the DISH Wireless Debtors: (i) prosecuting an unconfirmable plan premised on the transfer of the illegitimate Intercompany Loan Claim to the manufactured Claims Trust to gerrymander the

---

3 Statement at 1.

4 *Id.* at 2.

5 *Id.* at 2–3.

6 *See The DISH Wireless Debtors' First Omnibus Objection to the Claims of Crown Castle, American Tower, and SBA* [Docket No. 906] (the "Tower Claim Objection").

7 On September 5, the Committee filed the White & Case Retention Objection, by which the Committee objected to the Debtors' application to retain White & Case as their counsel due to pervasive conflicts of interest arising from White & Case's past and continuing contemporaneous representations of the Debtors, the Debtors' ultimate parent company, EchoStar Corporation ("EchoStar"), and EchoStar's direct and indirect non-Debtor subsidiaries.

votes needed to meet the Bankruptcy Code's numerosity requirement for confirmation of a plan; and (ii) seeking approval of the EchoStar Stalking Horse APA and EchoStar DIP Facility, despite each providing manifest benefits for EchoStar at the expense of the DISH Wireless Debtors' interests.

3. As to the Special Committee, these actions (or inactions) include having (i) allowed the DWLLC Board to pursue the ill-fated DISH Wireless Plan, (ii) permitted the DISH Wireless Debtors' entry into the EchoStar Stalking Horse APA, which contemplates the sale of billions of dollars in claims and causes of action against EchoStar and its affiliates without having investigated such claims and causes of action, (iii) failed to pursue any post-petition financing outside of the EchoStar DIP Facility that was tied to the EchoStar Stalking Horse APA and (iv) permitted the DISH Wireless Debtors' proposed restructuring counsel, White & Case, to do EchoStar's bidding and cause the incurrence of millions of dollars in professional fees to challenge all of the foregoing. Most recently, the Special Committee apparently determined to support the DISH Wireless Debtors' proposed course of action as outlined in the Statement.

4. The Debtors' seemingly magnanimous offer to "pause" the pending litigation workstreams to give the parties an opportunity to negotiate a global resolution rings hollow and again underscores the Debtors' blatantly misleading behavior. Indeed, the filing of the Statement itself evidences the Debtors' behavior over the course of these cases: on September 4, at 11:05 a.m. (ET), White & Case sent an email to a number of parties in interest involved in these cases, including proposed counsel to the Committee, advising such parties that the Debtors would be filing a brief statement together with the revised plan documents for the DBS Debtors.[8] White &

---

8 *See* September 4, 2026 Email from Devin Rivero, attached hereto as **Exhibit 1**.

Case further advised that they would "share that statement with this group prior to filing."[9] Notwithstanding this clear and unambiguous communication, no such draft was shared at any point prior to the filing of the Statement on the docket on September 4, at 7:33 p.m. (ET). The Committee suspects that no such draft was shared because, if it had been shared, the Committee would immediately have taken issue with the fact that the Statement—which purports to describe a standstill designed to facilitate settlement discussions—is a *one-way* pause in which all parties seeking to (a) pursue claims related to the transfer of the DISH Wireless Debtors' Boost Mobile business and/or (b) challenge the propriety of the Intercompany Loan Claim and related Claims Trust structure (*i.e.*, the Committee and the DISH Wireless Debtors' most significant creditors) *would not* be permitted to proceed with such litigation (and indeed the Debtors would not be obligated to comply with any discovery obligations in connection with the foregoing), while the DISH Wireless Debtors *would* continue to pursue all litigation associated with the Tower Claim Objection (and by extension all other similarly situated creditors that will be impacted by such litigation).[10] This one-way putative pause simply does not reflect a good-faith desire to lay down arms and negotiate a consensual resolution with all parties on equal footing, which was a pathway that the Committee communicated, to both the Special Committee and White & Case, that it and the Tower Claimants would fully endorse, and which the Committee was led to believe at least the Special Committee supported.

5. Importantly, the expense associated with the foregoing litigation is being borne exclusively by the DISH Wireless Debtors' unsecured creditors, who are projected to recover only 1.4–2.2% of their claims under the most recent DISH Wireless Plan. Moreover, the DISH Wireless

9 *Id.*

10 *See* Tower Claim Objection.

Debtors' actions have forced and will continue to force the Tower Claimants and potentially hundreds of other similarly situated creditors impacted by such litigation to incur significant expenses defending the Tower Claim Objection or otherwise participating in the litigation surrounding the Tower Claim Objection to ensure that their rights are not prejudiced in connection therewith. Common sense dictates that any litigation standstill implemented for the purpose of facilitating global settlement discussions should apply to all parties involved, without forcing DISH Wireless creditors to continue to incur litigation expenses that may ultimately be unnecessary.

6. Unfortunately, the DISH Wireless Debtors' actions in this regard are indicative of the manner in which they have conducted these cases thus far and reflect their intent, once again, to pursue the interests of non-Debtor affiliates including, most obviously, EchoStar and Charles Ergen at the direct expense of their estates and their creditors. Given the Debtors' position that the bankruptcy claims allowance process will determine the amount of claims that may be asserted against the FCC Trust (which is not property of the estate), continuing to pursue the Tower Claim Objection is a transparent attempt to advance EchoStar's interest in limiting the amount of claims that may be asserted against the FCC Trust so that EchoStar may receive its residual value.[11] This effort to reduce claims against non-estate property to the detriment of creditors and solely to benefit an insider has no place in chapter 11.

7. Moreover, the conflicts and motivations driving members of DWLLC's own board are exemplified by EchoStar's determination, on August 31, to file an Application for Review[12] of

---

[11] *See, e.g.,* Transcript of August 18, 2026 Hearing at 20:1–6 ("[F]ollowing the disposition of the claims objections, we believe will be determined in an amount, if any, that is, capped under 502(b)(6) and together with all the potential allowed amounts of the other claims will be under the 2.4 billion total amount that's on deposit for the trust.").

[12] *Application for Review of EchoStar Corporation*, WT Docket No. 25-303, GN Docket No. 25-302 (Aug. 30, 2026).

the FCC's July 30 order pursuant to which the FCC clarified its prior orders concerning the FCC Trust—which it stated should have been "obvious" without the need for clarification—that neither EchoStar nor any of its affiliates (or assignees) could assert a claim (directly or indirectly) against the FCC Trust.[13] EchoStar's action, *which shockingly was taken by DWLLC Board member Jeffrey Blum*, (i) directly contradicts the DISH Wireless Debtors' previous statements to this Court, that in light of the July 30 order these were now "full pay" cases requiring adjudication of the allowance of the Tower Claimant's claims for chapter 11 plan purposes notwithstanding the prior estimation motion-related stipulations,[14] (ii) runs contrary to the interests of the DISH Wireless Debtors' estates and (iii) reflects another obvious admission that the disputed Intercompany Loan Claim—although putatively held by the Claims Trust—is, was and has always been asserted by and for the benefit of one or more insiders of the DISH Wireless Debtors. Notably, and notwithstanding the Debtors' prior statements to the Court and representations to DISH Wireless creditors that the "FCC has now confirmed that the FCC Trust exists to pay [third party unsecured creditors] – not the DWLLC Intercompany Claim,"[15] neither the DISH Wireless Debtors nor the Special

---

13 *In the Matter of Applications of AT&T Mobility II LLC and EchoStar Corporation for Consent to Assign Licenses, Applications of Spectrum Business Trust 2025-1, Space Exploration Technologies Corp., and EchoStar Corporation for Consent to Assign Spectrum and Earth Station Licenses*, WT Docket No. 25-303, GN Docket No. 25-302, Memorandum Opinion and Order (WTB July 30, 2026) at 1 ("EchoStar has now told a federal bankruptcy court that this fund can be used to pay a loan one EchoStar subsidiary supposedly made to another, a claim so large it threatens to swallow the fund. We disagree, and clarify what should be obvious – that the fund cannot be used to pay companies that did not build the network. And to ensure that that the purpose of the fund is not perverted, we also modify the fund's terms to explicitly exclude from payment any claims of EchoStar or its subsidiaries.").

14 Transcript of August 11, 2026 Hearing at 8:18–23 ("Our position now is that the Debtors believe that the FCC's order fundamentally changes the landscape of these cases. We expect[ ] the FCC trust, which is fully funded—it was fully funded on July 28th with $2.4 billion dollars—is more than sufficient to pay in full all eligible allowed Dish Wireless general unsecured claims.").

15 *See [Proposed] Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, (III) Approving the Form of Ballots and Notices, (IV) Approving Certain Dates and Deadlines in Connection with the Solicitation and Confirmation of the Plan, (V) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (VI) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Creditors' Meeting for the DBS Debtors and (B) the DBS Debtors File Schedules of Assets and Liabilities and Statements of Financial Affairs,*

Committee informed the Court of Blum's submission (on behalf of EchoStar) of the Application for Review challenging the FCC's directive. The failure to advise the Court of this crucial development is particularly concerning given that the entire premise offered by the DISH Wireless Debtors to justify expedited consideration of the Tower Claim Objection ahead of the objection to the Intercompany Loan Claim (which was filed a month earlier and if sustained on one of many grounds—which the Committee believes is certain—will prevent confirmation of the DISH Wireless Plan) was that adjudicating the Tower Claim Objection may enable DISH Wireless creditors to be paid in full from the FCC Trust.[16] Of course, this assumption is premised on the entry of final non-appealable orders sustaining the Tower Claim Objection and determining that (x) *force majeure* provisions in the underlying tower contracts eliminate the Tower Claimants' claims or (y) the Tower Claimants' claims are capped under Bankruptcy Code section 502(b)(6) at the DISH Wireless Debtors' estimated amounts and that any section 502(b)(6)-related limitation would apply to claims asserted against the FCC Trust, which is a non-Debtor entity holding non-estate property.

8. Against this backdrop, the Committee again has no choice but to take action to defend the rights of the unsecured creditors of the DISH Wireless Debtors' estates. Although the

*and Rule 2015.3 Reports, and (VII) Granting Related Relief* [Docket No. 914] (the "Proposed Solicitation Order"), Ex. 2-2 (Debtors' Supplemental Cover Letter) at 1.

[16] *See, e.g.,* Transcript of August 11, 2026 Hearing at 43:9–19 ("Our view is really the intercompany note issues, you could sit back because if people get payment in full it really doesn't matter whether their bondholders are able to collect on the intercompany note . . . that's not a basis for saying that we shouldn't be adjudicating what we think is really the most important issue, the most case dispositive issue, and that's setting claims."); Transcript of August 18, 2026 Hearing at 19:17-20:6 ("The Debtors had never before contemplated as I think the objectors rightly pointed out before that development, the Debtors had not contemplated pre-confirmation claims allowance litigation. There was no reason to until the FCC acted. That's because there was no prospect that the FCC Trust could be sufficient to pay in full both the intercompany claim, which is $8.8 billion and all tower lease and other contract, and vendor claims, which are asserted in an amount larger than the amount of the trust, but as we've indicated, following the disposition of the claims objections, we believe will be determined in an amount, if any, that is, capped under 502(b)(6) and together with all the potential allowed amounts of the other claims will be under the 2.4 billion total amount that's on deposit for the trust.").

Committee is (and has been) prepared to engage in good-faith negotiations over potential settlement structures that would eliminate the need to engage in protracted litigation, it has become increasingly apparent that there is *no* independent fiduciary representing the DISH Wireless Debtors with whom the Committee can engage in any meaningful way. Accordingly, and concurrent with the filing of this Response, the Committee has been forced to file the *Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order (I) Appointing a Chapter 11 Trustee for the DISH Wireless Debtors Pursuant to Bankruptcy Code Section 1104(a) or, Alternatively, (II) Terminating the DISH Wireless Debtors' Exclusive Periods Pursuant to Bankruptcy Code Section 1121(d)*] [Docket No. 1361] (the "Trustee Motion").

9. The Committee is seeking to have the Trustee Motion heard on an emergency basis on September 23, at which time it will present in full the entirety of the circumstances justifying the requested relief.

[*Remainder of page left blank intentionally*]

Dated: September 6, 2026

Respectfully Submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr. (State Bar No. 00793386;
S.D. Tex. 30464)
Laura Warrick (State Bar No. 24079546;
S.D. Tex. 3437415)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com
Email: lwarrick@akingump.com

-and-

Ira S. Dizengoff (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
Email: pdublin@akingump.com
Email: mlahaie@akingump.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of DISH DBS Corporation, DISH Wireless L.L.C.,* et al.

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 6, 2026, a true and correct copy of the foregoing was served via email through the Bankruptcy Court's Electronic Case Filing System on the parties that have consented to such service.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

# EXHIBIT 1

**From:** Rivero, Devin <devin.rivero@whitecase.com>
**Sent:** Friday, September 4, 2026 11:05 AM
**To:** Laukitis, Lisa; McCauley, Sean; Wee, Lawrence; Eland, James; Almeida, Nelly (External); Dunne, Dennis (External); Debold, Abigail; Lerner, Leib (External); Harris, Douglas (External); Dunn, Joseph; O'Brient, Abigail (External); DISH - Akin FR; Lisovicz, Edan; Dublin, Philip; Lahaie, Meredith; susheelkirpalani@quinnemanuel.com; Finestone, Benjamin (External); Scherling, Kate (External); Garza, Vianey (USTP); Schaefer, Amanda; Silverman, Matthew (External); Lieberman, Seth (External); Sibley, Patrick (External); Reed, Jason (External); Whitmore, Clark (External); Michael Rosow
**Cc:** Linder, Matthew; Baccash, Laura; Hershey, Samuel; W&C DISH FRI Team
**Subject:** RE: DISH - DBS Plan and DBS Disclosure Statement

**EXTERNAL Email**

*Confidential*

All,

We will be circulating revised versions of the standalone DBS-only plan, disclosure statement, and solicitation procedures order later this morning. And we will be filing those documents with the Court before close of business today. We understand the Committee and others have comments that they would like us to reflect in the documents, and we will be making every effort to accommodate.

The DISH Wireless-only plan, disclosure statement, and solicitation procedures order will not be filed today.

We will be filing a brief statement with the Court concurrently with the DBS filings to address status. We will share that statement with this group prior to filing.

Thank you,
Devin

**Devin Rivero** | Associate
**T** +1 305 995 5253 **M** +1 786 403 2881 **E** devin.rivero@whitecase.com
White & Case LLP | Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900 | Miami, FL 33131-2352

---

**From:** Rivero, Devin
**Sent:** Thursday, September 3, 2026 5:02 PM
**To:** 'Laukitis, Lisa' <llaukitis@milbank.com>; 'McCauley, Sean' <sean.mccauley@lazard.com>; 'Wee, Lawrence' <lwee@milbank.com>; 'Eland, James' <jeland@milbank.com>; 'Almeida, Nelly (External)' <NAlmeida@milbank.com>; 'Dunne, Dennis' <DDunne@milbank.com>; Debold, Abigail <adebold@milbank.com>; Leib Lerner <leib.lerner@lernerharris.com>; Douglas Harris <douglas.harris@lernerharris.com>; Dunn, Joseph <JDunn@cov.com>; O'Brient, Abigail (External) <AOBrient@cov.com>; DISH - Akin FR <DISH-AkinFR@akingump.com>; Lisovicz, Edan <elisovicz@akingump.com>; Dublin, Philip <pdublin@AkinGump.com>; Lahaie, Meredith <mlahaie@akingump.com>; susheelkirpalani@quinnemanuel.com; benjaminfinestone@quinnemanuel.com; katescherling@quinnemanuel.com; Garza, Vianey (USTP) <Vianey.Garza@usdoj.gov>; 'Schaefer, Amanda' <ASchaefer@pryorcashman.com>; Silverman, Matthew (External) <MSilverman@pryorcashman.com>; Lieberman, Seth (External) <SLieberman@PRYORCASHMAN.com>; Sibley, Patrick <PSibley@pryorcashman.com>; 'Jason Reed' <Jason.Reed@maslon.com>; Clark Whitmore <Clark.Whitmore@maslon.com>; Michael Rosow <Michael.Rosow@maslon.com>
**Cc:** Linder, Matthew <mlinder@whitecase.com>; Baccash, Laura <laura.baccash@whitecase.com>; Hershey, Samuel

<sam.hershey@whitecase.com>; W&C DISH FRI Team <WCDISHFRITeam@whitecase.com>
**Subject:** DISH - DBS Plan and DBS Disclosure Statement

*Confidential*

Hi all,

Please see the attached revised Plan for the DBS Debtors, a redline against Friday's version, and the Disclosure Statement for the DBS Debtors. We intend to file these materials by the end of the week.

We will circulate a revised proposed solicitation procedures order separately. We do not anticipate any material changes with respect to the DBS Debtors. For reference, below is the proposed confirmation schedule applicable to the Plan for the DBS Debtors only.

| DBS Event | Date |
|---|---|
| Voting Record Date | June 29, 2026 |
| DBS Debtors' Deadline to Distribute Combined Hearing Notice | Two (2) business days following entry of this Order (or as soon as reasonably practicable thereafter) |
| DBS Debtors' Deadline to Publish Combined Hearing Notice | Four (4) business days following entry this Order (or as soon as reasonably practicable thereafter) |
| DBS Debtors' Deadline to File Plan Supplement | September 11, 2026 |
| 1. Voting Deadline<br>2. Plan and Disclosure Statement Objection Deadline<br>3. Opt In Deadline for Third-Party Release | September 21, 2026 at 5:00 p.m. |
| 1. Voting Report Deadline<br>2. Confirmation Brief Deadline | September 24, 2026 |
| Combined Hearing | September 29, 2026 at 9:00 a.m. |

Thank you,
Devin

**Devin Rivero** | Associate
**T** +1 305 995 5253 **M** +1 786 403 2881 **E** devin.rivero@whitecase.com
White & Case LLP | Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900 | Miami, FL 33131-2352

WHITE & CASE

==============================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the

sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available here.

==============================================================================