**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DISH DBS CORPORATION,<br>DISH WIRELESS L.L.C., *et al.*,[1] | ) | Case No. 26-90627 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**DISH WIRELESS DEBTORS' AND SPECIAL COMMITTEE'S STATEMENT REGARDING (I) THE *AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF DISH WIRELESS L.L.C. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION* (DKT. NO. 1456) AND (II) THE PAUSE OF DISCOVERY AND LITIGATION AMONG THE DISH WIRELESS DEBTORS, THE SPECIAL COMMITTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE TOWER CLAIMANTS**

The DISH Wireless Debtors and the Special Committee of Independent Managers of DISH Wireless L.L.C. (the "**Special Committee**") jointly submit this statement regarding (i) the *Amended Joint Prepackaged Chapter 11 Plan of DISH Wireless L.L.C. and Its Affiliated Debtors and Debtors in Possession* [Dkt. No. 1456] (the "**Amended Plan**")[2] that the DISH Wireless Debtors filed on September 12, 2026 and (ii) the two-week pause of discovery and litigation among the DISH Wireless Debtors, the Special Committee, the Official Committee of Unsecured Creditors (the "**Committee**"), and the tower-claimant members of the Committee (Crown Castle, American Tower, and SBA).

1 The last four digits of DISH DBS Corporation's and DISH Wireless L.L.C.'s respective tax identification numbers are 8967 and 6388. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/DBS. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

2 Capitalized terms used but not otherwise defined in this statement have the meanings ascribed to such terms in the Amended Plan.

## I. The Amended Plan

1. The Amended Plan is the product of the DISH Wireless Debtors' and the Special Committee's concerted efforts following the August 18 hearing, when the Court expressed concern that the parties were "digging trenches" rather than opening lines of communication to "talk and [] fight at the same time." Hr'g Tr. 82:22–25, 83:1–4, 84:16–22 (Aug. 18, 2026). During the weeks that followed, the DISH Wireless Debtors and the Special Committee formulated—and previewed with the Committee and its tower-lessor members—the core elements of the Amended Plan with a view toward achieving several important and interrelated restructuring objectives: curtailing the runaway restructuring expenses that, if unchecked, will soon push the DISH Wireless Debtors' estates to the brink of administrative insolvency and risk conversion of these cases to chapter 7; quickly delivering value from the $2.4 billion FCC Trust to the overwhelming majority of creditors that have no interest in further value-destructive litigation; illuminating the pathway to prompt confirmation and emergence, if sufficient consensus can be achieved, based only on the accepting votes of tower-lease and other creditors eligible to recover from the FCC Trust, excluding the DWLLC Intercompany Loan Claim; and moving forward with the DISH Wireless Debtors' objections to the largest tower-lease claims only *after* the DISH Wireless Debtors emerge from bankruptcy under the Amended Plan.

2. Accordingly, in the interest of meaningfully progressing the cases, the DISH Wireless Debtors and the Special Committee have filed the Amended Plan. As noted above, the material changes reflected in the Amended Plan were previewed with the Committee and its tower-lessor members. These material changes include the following, all of which are geared toward

delivering value to creditors and affording them the choice of the recovery method that best aligns with their perspective on value:[3]

- **Related Party Retained Causes of Action**. At emergence, the DISH Wireless Debtors' estate causes of action against EchoStar and its affiliates and related parties (the "**Related Party Retained Causes of Action**")—including any claims related to the BoostCo Transaction—will vest in a Special Governance Committee established under the Amended Plan. Applicable statutes of limitation, repose, and other time-related defenses or bars applicable to the Related Party Retained Causes of Action shall be tolled until after all claims against the DISH Wireless Debtors that are treated under the Amended Plan have been allowed or disallowed. The Amended Plan contains no non-consensual release of any claims against any non-Debtor.

- **Special Governance Committee**. The Special Governance Committee will have the exclusive authority to prosecute, settle, or otherwise resolve the Related Party Retained Causes of Action and to reconcile, object to, prosecute, settle, or otherwise resolve claims against the DISH Wireless Debtors that are not FCC Trust-Eligible Claims, which include the DWLLC Intercompany Loan Claim and claims asserted by non-Debtor affiliates.

- **Special Governance Committee Members**. The Committee will appoint the initial members of the Special Governance Committee, and EchoStar will have no control over its decision-making. In the interim, pending confirmation of the Amended Plan, no litigation will take place with respect to any claims that are within the purview of the Special Governance Committee.

- **Claims Administration**. From and after the Effective Date, the Post-Effective Date DISH Wireless Debtors will have exclusive authority to reconcile, object to, prosecute, settle, and otherwise resolve FCC Trust-Eligible Claims, including the FCC Trust-Eligible tower lease claims. Post-Effective Date DWLLC will be governed by a board of managers appointed by Neyland Networks LLC, its sole member. The costs and expenses incurred by the Post-Effective Date DISH Wireless Debtors in connection with the administration and wind down of the estates will be funded from the Wind Down Debtor Account.

- **Quick Pay Election**. Any holder of a Secured Type A Claim in Class 2D or an FCC Trust-Eligible Claim in Class 2E that votes to accept the Amended Plan may make the voluntary "Quick Pay Election" and automatically receive payment of an amount equal to 70% (in the case of Class 2D) or 60% (in the

[3] This summary identifies certain key material changes to the Amended Plan but does not purport to be comprehensive, and the changes described herein remain subject to further negotiation and discussion during the upcoming settlement discussions. Creditors are encouraged to review the Amended Plan and to consult counsel regarding its treatment of their claims.

case of Class 2E) of the DISH Wireless Debtors' good-faith estimate of the allowed amount of each such claim. This estimate assumes that all damages asserted by counterparties to real property leases are capped under section 502(b)(6) of the Bankruptcy Code but that the DISH Wireless Debtors do not assert their contractual or common law defenses.[4]

- **FCC Trust Amendments**. EchoStar and the DISH Wireless Debtors will jointly request (and seek the Committee's and its tower-lessor members' support for) an amendment to the FCC Trust Agreement that permits creditors that make the Quick Pay Election to be paid within 10 days of emergence instead of waiting six months or more under the current terms of the FCC Trust.

- **DWLLC Intercompany Loan Claim**. The DWLLC Intercompany Loan Claim is not entitled to vote to accept or reject this Amended Plan unless otherwise agreed pursuant to the terms of a settlement approved by the Bankruptcy Court. As noted above, after emergence under the Amended Plan, the Special Governance Committee will have full power and authority to address the DWLLC Intercompany Loan Claim. Thus, confirmation of the Amended Plan will be determined based on an up-or-down vote of FCC Trust-Eligible Claims in Class 2E.

- **Non-Electing Holders' Rights Preserved**. Any creditor holding an FCC Trust-Eligible Claim in Class 2E that does not make the FCC Trust Election or the Quick Pay Election, on the one hand, and the DISH Wireless Debtors and Post-Effective Date DISH Wireless Debtors, on the other hand, will retain all of their respective rights, claims, causes of action, defenses, and arguments with respect each FCC Trust-Eligible Claim that does not make the Quick Pay Election, including such claim's amount, source of recovery, validity, priority, or characterization. Each non-electing creditor will receive, in connection with its Allowed Claim, a pro rata distribution of 100% of the distributable value of the DISH Wireless Debtors' estates and any proceeds of Retained Causes of Action—including any proceeds of causes of action related to the BoostCo Transaction.

3. Just as important as what the Amended Plan does is what it does not do. The Amended Plan does not: (a) seek to resolve any claims or causes of action of the DISH Wireless Debtors' estates by selling them to EchoStar or any of its non-Debtor subsidiaries; (b) rely on the vote of the DWLLC Intercompany Loan Claim to cause Class 2E to be an accepting class; (c) treat the DWLLC Intercompany Loan Claim as an allowed claim; or (d) penalize any

[4] The DISH Wireless Debtors reserve the right to assert such defenses post-emergence in connection with their administration of claims that do not make the Quick Pay Election.

creditor for electing to pursue its recovery from assets of the DISH Wireless Debtors' estates, including litigation proceeds generated by Retained Causes of Action.

## II. The Pause of Litigation, Discovery and Hearing Dates

4. The DISH Wireless Debtors and the Special Committee firmly embrace the view that, despite hostilities to date, it is beneficial to implement a two-week pause, commencing immediately, of all discovery, litigation, and hearings (other than the status conference scheduled for Monday, September 14 at 1:00 p.m. Central Time). The Committee and its tower-claimant members, Crown Castle, American Tower, and SBA, have agreed to this pause. During the pause, the DISH Wireless Debtors and the Special Committee hope to cooperatively engage with the Committee and tower lessors to refine and obtain support for the Amended Plan. They also intend to continue negotiations with the tower lessors regarding the quantum of their claims and how they should be treated.

5. The Committee and tower lessors have insisted that the pause apply to all pending litigation, including the DISH Wireless Debtors' pending objection to the tower claimants' claims [Dkt. No. 906] (the "**Debtors' Claims Objection**"). The DISH Wireless Debtors have conveyed to the tower lessors their reticence to agree to a pause of the Debtors' Claims Objection, which would necessitate at least some further delay of the hearing on such objection. This reticence stems from the DISH Wireless Debtors' belief that, whether done before or after confirmation of the Amended Plan, resolution of the quantum and treatment of the tower claims is essential to the ultimate resolution of the cases. Moreover, given the magnitude of the gap in the parties' views on issues relevant to the allowance of such claims, a determination by the Court may be necessary to resolve the claims.

6. The DISH Wireless Debtors have nevertheless agreed to the pause based on their understanding that (a) the parties will minimize professional fees during the pause and (b) if an agreement is reached on the Amended Plan, the professional fees required to obtain confirmation and emerge from chapter 11 under the Amended Plan will be manageable. The DISH Wireless Debtors are also amenable to the pause based on the good-faith assumption that the Court will reset the current hearing date on the Debtors' Claims Objection, scheduled to proceed beginning on November 12, for the earliest available date, as soon as possible after the Thanksgiving holiday, which is two weeks after the current hearing date. Moreover, the DISH Wireless Debtors anticipate that they, the Special Committee, Crown Castle and American Tower will agree to mediation, with a mediator acceptable to each of the parties, regarding the amount and sources of payment of Crown Castle's and American Tower's claims.

7. The interests of the DISH Wireless Debtors' estates are best served by allowing creditors to form their own views on the terms of the Amended Plan. The DISH Wireless Debtors are committed to the flexible, collaborative, and value-maximizing approach reflected in the Amended Plan. The DISH Wireless Debtors and the Special Committee are prepared to commence solicitation of votes on the Amended Plan and to proceed toward a prompt confirmation hearing as soon as there is sufficient consensus to proceed. If sufficient consensus cannot be reached, the DISH Wireless Debtors and the Special Committee will consider other available alternatives, including conversion of the cases to chapter 7.

8. The Amended Plan offers a direct path to each of the DISH Wireless Debtors' unsecured creditors, including (a) those prepared to recover from the FCC Trust at a discount that appropriately reflects the expedited payment of their claims, (b) those willing to wait to recover from the FCC Trust if their claims are allowed, and (c) those who believe that estate causes of

action are the best option for recovering on their claims, if allowed, despite the inherent uncertainty of litigation. The DISH Wireless Debtors look forward to discussing the Amended Plan with the Court at the status hearing on Monday, September 14, and to refining the Amended Plan and working toward a global resolution with the Committee and tower claimants during the two-week pause.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 13, 2026

*/s/ Charles R. Koster*

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Email: charles.koster@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Email: rgorsich@whitecase.com
doah.kim@whitecase.com

**WHITE & CASE LLP**
Thomas E Lauria (Texas Bar No. 11998025)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: tlauria@whitecase.com

Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
300 N. LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Email: mlinder@whitecase.com
laura.baccash@whitecase.com

J. Christopher Shore (*pro hac vice* pending)
Samuel P. Hershey (S.D. Texas Fed. No. 3465170)
Andrea Amulic (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: cshore@whitecase.com
sam.hershey@whitecase.com
andrea.amulic@whitecase.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**DENTONS US LLP**

/s/ *John D. Beck*
John D. Beck (Texas Bar No. 24073898)
David K. Shim (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Tel: (212) 768-6700
Email: john.beck@dentons.com
david.shim@dentons.com

Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa St, Suite 2500
Los Angeles, CA 90017-5704
Tel: (213) 623-9300
Email: van.durrer@dentons.com

*Counsel for the Special Committee of the Board of Managers of DISH Wireless L.L.C.*

**Certificate of Service**

I certify that on September 13, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles R. Koster*
Charles R. Koster