**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| DISH DBS CORPORATION<br>DISH WIRELESS L.L.C., *et al.*,[1] | ) | Case No. 26-90627 (CML) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF COMBINED HEARING TO CONSIDER FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF THE DBS DEBTORS' MODIFIED JOINT PREPACKAGED PLAN AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on June 30, 2026, the above-captioned debtors and debtors in possession (the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). On September 4, 2026, DISH DBS Corporation and its affiliated debtors and debtors in possession (collectively, the "**DBS Debtors**") filed the *Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of Its Subsidiaries* and all exhibits related thereto (as may be amended, supplemented, or modified from time to time, the "**Plan**") and the *Disclosure Statement for the Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of Its Subsidiaries* (as may be amended, supplemented, or modified from time to time, the "**Disclosure Statement**").[2] On September 17, 2026, the Bankruptcy Court entered an order, among other things: (a) conditionally approving the Disclosure Statement, (b) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (c) scheduling certain dates with respect thereto.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "**Combined Hearing**") will commence before the Honorable Christopher M. Lopez, in Courtroom 402 of the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas, 77002 on **September 29, 2026 at 1:00 p.m. (prevailing Central Time)**. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the DBS Debtors without further notice other than by such adjournment

[1] The last four digits of DISH DBS Corporation's and DISH Wireless L.L.C.'s respective tax identification numbers are 8967 and 6388. A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/DBS. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement. To the extent there is a discrepancy between the terms herein and the Plan and the Disclosure Statement, the Plan and the Disclosure Statement, as applicable, shall govern and control.

being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**CRITICAL INFORMATION REGARDING VOTING ON THE PLAN**

**Voting Record Date**. The Voting Record Date for determining which Holders of Claims in Class 1C (2026 Senior Secured Notes Claims), Class 1D (2028 Senior Secured Notes Claims), Class 1F (2028 Senior Notes Claims), and Class 1G (2029 Senior Notes Claims) (collectively, the "**Voting Classes**"), are entitled to vote on the Plan was **June 29, 2026** (the "**Voting Record Date**").

**Voting Deadline**. The deadline to vote to accept or reject the Plan is **September 23, 2026 at 5:00 p.m. (prevailing Central Time)** (the "**Voting Deadline**"). If you are entitled to vote on the Plan, received a Solicitation Package, including a Ballot and intend to vote on the Plan you ***must***: (a) follow the instructions on the Ballot and Solicitation and Voting Procedures carefully; (b) complete all of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on the Ballot so that it is ***actually received*** by the Debtors' Solicitation Agent on or before the Voting Deadline. ***A failure to follow such instructions may disqualify your vote***.

**Opt In Deadline**. The deadline to opt in to the Third-Party Release in the Plan (the "**Opt In Deadline**") is **September 23, 2026, at 5:00 p.m. (prevailing Central Time)**. The Non-Voting Classes with Unimpaired or Impaired Claims in Classes 1A, 1B, 1H, 1I, and 1J, may opt in to the Third-Party Release on the Release Opt In Form attached to the applicable *Notice of Non-Voting Status*.[3] Opt in elections must be submitted pursuant to the instructions provided in the Release Opt In Form so that such document is received by the Solicitation Agent by the applicable Opt In Deadline.

**CRITICAL INFORMATION REGARDING OBJECTING TO FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN**

**Plan and Disclosure Statement Objection Deadline**. The deadline for filing objections to the Plan and the Disclosure Statement (each, an "**Objection**"), is **September 23, 2026, at 5:00 p.m. (prevailing Central Time)** (the "**Plan and Disclosure Statement Objection Deadline**"). Any Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Bankruptcy Court; (c) state, with particularity, the legal and factual bases for the Objection and, if practicable, a proposed modification to the Disclosure Statement or Plan (or related materials) that would resolve such Objection; and (d) be filed with the Bankruptcy Court on or before the Plan and Disclosure Statement Objection Deadline. If an Objection is not timely served and filed in accordance with this notice, it may not be considered by the Bankruptcy Court.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.F CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER**.

**HOLDERS OF CLAIMS OR INTERESTS THAT (A) ELECT TO OPT IN TO THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.F OF THE PLAN; OR (B) DO NOT TIMELY FILE WITH THE BANKRUPTCY COURT AN OBJECTION TO THE THIRD-PARTY RELEASE**

3 The Debtors will seek a waiver of any requirement to serve the *Notice of Non-Voting Status*, or any other type of notice in connection with the Plan as such Claims and Interests are held by the Debtors' affiliates and not individual creditors or interest holders.

**THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE THIRD-PARTY RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. PLEASE BE ADVISED THAT YOUR DECISION TO OPT IN DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE, IF ANY, UNDER THE PLAN.**

**FOR THE AVOIDANCE OF DOUBT, AS SET FORTH IN ARTICLE VIII.F OF THE PLAN, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NOTHING IN THE PLAN, NOR ANY ORDER OF THE BANKRUPTCY COURT, INCLUDING THE CONFIRMATION ORDER, OR ANY ELIGIBLE HOLDER'S ELECTION NOT TO OPT IN TO THE THIRD-PARTY RELEASE (AS APPLICABLE), OR TO OBJECT TO THE THIRD-PARTY RELEASE, SHALL MODIFY OR OTHERWISE AFFECT THE REQUIREMENT OF THE FCC TRUST DOCUMENTS THAT ANY ENTITY SEEKING TO RECOVER FROM THE FCC TRUST EXECUTE A FULL AND COMPLETE RELEASE AND DISCHARGE OF ANY AND ALL COVERED CLAIMS AGAINST THE ECHOSTAR PARTIES, IN A FORM PREPARED AND PROMULGATED BY THE TRUSTEE THAT IS ACCEPTABLE TO ECHOSTAR AND DWLLC.**

**Please be advised that Article VIII of the Plan contains the following release, exculpation, and injunction provisions.**[4]

Article VIII.C of the Plan provides for a release by the DBS Debtors:

**Notwithstanding anything contained in this Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, in each case except for Claims arising under, or expressly preserved by, this Plan, to the fullest extent permitted under applicable Law, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the DBS Debtors, the DBS Estates, and the Reorganized DBS Debtors, in each case on behalf of themselves and their respective successors, assigns, and Representatives, and any and all Entities that may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the DBS Debtors, the DBS Estates, and the Reorganized DBS Debtors, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or the DBS Estates, Affiliates, heirs, executors, administrators, successors, assigns, Representatives, or any other Entity claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest or Intercompany Interest in, a DBS Debtor or other Entity, or that any Holder of any Claim against or Interest or Intercompany Interest in a DBS Debtor or other Entity could have asserted on behalf of the DBS Debtors based on or relating to, or in any manner arising from, in whole or in part, the DBS Debtors (including the management, ownership, or operation thereof or otherwise), the purchase, sale, or rescission of any Security of the DBS Debtors or the Reorganized DBS Debtors, the**

[4] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is an inconsistency between the provisions set forth herein and the Plan, the Plan governs.

**Restructuring Transactions, the Chapter 11 Cases of the DBS Debtors, the DBS Debtors' in- or out-of- court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any DBS Debtor and any Released Party, the distribution of any Cash or other property of the DBS Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the DBS Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases of the DBS Debtors, intercompany transactions between or among the DBS Debtors or between or among the DBS Debtors and their non-DBS Debtor Affiliates, the Restructuring Support Agreement, the Amended Notes, the Amended Notes Indentures, Disclosure Statement Order, the Confirmation Order, the First Day Pleadings, the Definitive Documents, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, this Plan, the Plan Supplement or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases of the DBS Debtors, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement under the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any post-Effective Date obligations of any party or Entity under this Plan, any exhibit to this Plan, the Confirmation Order, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Materials, the DWLLC Intercompany Loan, the First Day Pleadings or any order entered related thereto, the Plan Supplement, the Amended Notes Indentures, or any other Definitive Document, including any amendments, restatements, supplements, or other modifications to such orders, agreements and documents; (2) any Cause of Action related to any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; or (3) any Claim, defense, right of setoff or recoupment, or Cause of Action of the DBS Debtors, the DBS Estates, or the Reorganized DBS Debtors against any Released Party that has filed a Proof of Claim against any of the DBS Estates in the Chapter 11 Cases, to the extent such Claim, defense, right of setoff or recoupment, or Cause of Action: (a) constitutes a defense to, or basis for objection to, the allowance of such proof of claim in whole or in part; (b) constitutes a right of setoff, recoupment, or counterclaim with respect to any liability asserted in or arising from such proof of claim; or (c) arises from or relates to the same transaction, agreement, series of transactions, or occurrence or series of occurrences giving rise to the claims or liabilities asserted in such proof of claim; provided that nothing in this clause (3) shall be construed to (i) revive or reinstate any Claim or Cause of Action that has been separately released, waived, or relinquished by a written agreement entered into prior to the Effective Date, (ii) limit the rights of any Released Party to assert any defense to any such Claim or Cause of Action, or (iii) expand the rights of the Reorganized DBS Debtors or any other Entity beyond those rights that existed under applicable Law as of the Petition Date.**

**Notwithstanding anything to the contrary herein, nothing in this Plan shall be deemed to release or enjoin any rights, claims, causes of action, or defenses of the DISH Wireless Debtors or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals, and the Related Parties of the foregoing, it being understood that all rights, claims, causes of action, and defenses of the DISH Wireless Debtors and/or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals, and any Related Parties of the foregoing are**

**expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived, or discharged under the Plan or the Confirmation Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the DBS Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the DBS Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to facilitating the Restructuring Transactions and implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the DBS Debtor Release; (3) in the best interests of the DBS Debtors, the DBS Estates, and all Holders of Claims, Interests, and Intercompany Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the DBS Debtors, the DBS Estates, and the Reorganized DBS Debtors asserting any Claim or Cause of Action released pursuant to the DBS Debtor Release.**

Article VIII.F of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each DBS Debtor, Reorganized DBS Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the DBS Debtors, the DBS Estates, or the Reorganized DBS Debtors (as applicable), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or the DBS Estates, Affiliates, heirs, executors, administrators, successors, assigns, Representatives, and any other Entities claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the DBS Debtors (including the management, ownership, or operation thereof or otherwise), the purchase, sale, or rescission of any Security of the DBS Debtors or the Reorganized DBS Debtors, the Restructuring Transactions, the DBS Debtors' Chapter 11 Cases, the DBS Debtors' in- or out- of- court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any DBS Debtor and any Released Party, the distribution of any Cash or other property of the DBS Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the DBS Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the DBS Debtors' Chapter 11 Cases, including the sale and marketing efforts related thereto, intercompany transactions between or among the DBS Debtors or between the DBS Debtors and their non-DBS Debtor Affiliates (other than the DISH Wireless Debtors), the Restructuring Support Agreement, the Amended Notes, the Amended Notes Indentures, the Disclosure Statement Order, the Confirmation Order, the First Day Pleadings, the Definitive Documents, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, this Plan, the Plan Supplement or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the**

**Restructuring Support Agreement, the Disclosure Statement, the Definitive Documents, this Plan, or the Plan Supplement, the filing of the DBS Debtors' Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement under the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under this Plan, any exhibit to this Plan, the Confirmation Order, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Materials, the DWLLC Intercompany Loan, the First Day Pleadings or any order entered related thereto, the Sale Order, the Plan Supplement, the Amended Notes Indentures, or any other Definitive Document, including any amendments, restatements, supplements, or other modifications to such orders, agreements and documents, or (2) any Cause of Action related to any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.**

**Notwithstanding anything to the contrary herein, nothing in this Plan shall be deemed to release or enjoin any rights, claims, causes of action or defenses of the DISH Wireless Debtors or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals and the Related Parties of the foregoing, it being understood that all rights, claims, causes of action and defenses of the DISH Wireless Debtors and/or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals and any Related Parties of the foregoing are expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived or discharged under the Plan or the Confirmation Order.**

**Notwithstanding anything to the contrary herein, nothing in this Plan shall be deemed to release or enjoin any rights, claims, causes of action or defenses that any holder of a claim against the DISH Wireless Debtors may have against any Person or Entity, including the DISH Wireless Debtors, the DBS Debtors, and the Related Parties of the foregoing, it being understood that all rights, claims, causes of action, and defenses of any holder of a claim against the DISH Wireless Debtors against any Person or Entity, including the DISH Wireless Debtors, the DBS Debtors, and any Related Parties of the foregoing in any way related to their claims against the DISH Wireless Debtors are expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived, or discharged under the Plan or the Confirmation Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to facilitating the Restructuring Transactions and implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the DBS Debtors and the DBS Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions related to the DBS Debtor Release and Third-Party Release:

Under the Plan, "***Released Parties***" means, collectively, each of the following, in each case solely in their respective capacities as such: (a) each DBS Debtor; (b) each Reorganized DBS Debtor; (c) each Consenting Creditor; (d) EchoStar; (e) each Releasing Party; and (f) each Related Party of each Entity in the foregoing clauses (a) through clause (e); provided, however, that, in each case, an Entity shall not be a Released Party if it: (x) elects not to opt in to (as applicable) the Third-Party Release; or (y) timely objects to the Third-Party Release and such objection is not withdrawn or otherwise resolved before entry of the Confirmation Order. For the avoidance of doubt and notwithstanding anything in this Plan to the contrary, no Entity that is not a Releasing Party shall be a Released Party.

Under the Plan, "***Releasing Parties***" means collectively, each of the following, in each case solely in their respective capacities as such: (a) each DBS Debtor; (b) each Reorganized DBS Debtor; (c) each Consenting Creditor; (d) EchoStar; (e) each Holder of one or more Claims that is not a Consenting Creditor; (f) each Holder of one or more Interests; and (g) each Related Party of each Entity in the foregoing clauses (a) through (f); provided, however, that, in the case of the parties referenced in clauses (e) or (f), an Entity shall not be a Releasing Party if it: (i) elects not to opt in to (as applicable) the Third-Party Release; (ii) timely objects to the Third-Party Release and such objection is not withdrawn or otherwise resolved before entry of the Confirmation Order; (iii) is a DISH Wireless Debtor; or (iv) is an HSSC Entity. For the avoidance of doubt, the Indenture Trustees are not Releasing Parties.

Article VIII.G of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, to the fullest extent permitted by applicable law, each Exculpated Party is exculpated from, and no Exculpated Party shall have or incur any liability to, or be subject to any right, claim or cause of action by, any Entity for any act or omission in connection with, relating to, or arising out of, the DBS Debtors' Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Definitive Documents, the Solicitation Materials, this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the DBS Debtors' Chapter 11 Cases, the First Day Pleadings, the Definitive Documents, the negotiation and pursuit of the Restructuring Support Agreement, the Amended Notes Indentures, the Plan Supplement, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement; provided, however, that the foregoing exculpation shall not apply to any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. The Exculpated Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities hereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability. The Exculpated Parties have, and upon Consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**Notwithstanding anything to the contrary herein, nothing in this Plan shall be deemed to release or enjoin any rights, claims, causes of action or defenses of the DISH Wireless Debtors or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals and the Related Parties of the foregoing, it being understood that all rights, claims, causes of action and defenses of the DISH Wireless Debtors and/or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals and any Related Parties of the foregoing are expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived, or discharged under the Plan or the Confirmation Order.**

**Notwithstanding anything to the contrary herein, nothing in this Plan shall be deemed to release or enjoin any rights, claims, causes of action, or defenses that any holder of a claim against the DISH Wireless Debtors may have against any Person or Entity, including the DISH Wireless Debtors, the DBS Debtors, and the Related Parties of the foregoing, it being understood that all rights, claims, causes of action, and defenses of any holder of a claim against the DISH Wireless Debtors against any Person or Entity, including the DISH Wireless Debtors, the DBS Debtors, and any Related Parties of the foregoing in any way related to their claims against the DISH Wireless Debtors are expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived, or discharged under the Plan or the Confirmation Order.**

Definition related to the Exculpation:

Under the Plan, "***Exculpated Party***" means each of: (a) the DBS Debtors; and (b) the Committee and each of its members (including Charter Communications Operating, LLC, as successor in interest to CoxCom LLC and in its capacity as an *ex officio* member of the Committee), for conduct within the scope of their duties related to the DBS Debtors.

Article VIII.H of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Intercompany Interests that have been released, discharged, or settled, or are subject to exculpation under this Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the DBS Debtors, the Reorganized DBS Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims, Interests, or Intercompany Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Causes of Action, Claims, Interests, or Intercompany Interests; and (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the DBS Estates of such Entities on account of or in connection with or with respect to any such Causes of Action, Claims, Interests, or Intercompany Interests. Notwithstanding anything to the contrary in this Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the DBS Debtors and any property dealt with by this Plan until the closing of the DBS Debtors' Chapter 11 Cases.**

**Upon entry of the Confirmation Order, all Holders of Claims, Interests, and Intercompany Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Each Holder of an Allowed DBS Notes Claim or other Claim or Interest, as applicable, by accepting, or being eligible to**

**accept, distributions under or Reinstatement of such Claim, Interest, or Intercompany Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.H.**

**Notwithstanding the foregoing and for the avoidance of doubt, the injunctions and stays set forth in this Article VIII.H shall not apply to any Reinstated Claim or any Administrative Claim against a DBS Debtor.**

**Notwithstanding anything to the contrary herein, nothing in this Plan shall be deemed to release or enjoin any rights, claims, causes of action or defenses of the DISH Wireless Debtors or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals and the Related Parties of the foregoing, it being understood that all rights, claims, causes of action and defenses of the DISH Wireless Debtors and/or their chapter 11 estates against any Person or Entity, including the DBS Debtors, their Professionals and any Related Parties of the foregoing are expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived or discharged under the Plan or the Confirmation Order.**

**Notwithstanding anything to the contrary herein, nothing in this Plan shall be deemed to release or enjoin any rights, claims, causes of action or defenses that any holder of a claim against the DISH Wireless Debtors may have against any Person or Entity, including the DISH Wireless Debtors, the DBS Debtors, and the Related Parties of the foregoing, it being understood that all rights, claims, causes of action, and defenses of any holder of a claim against the DISH Wireless Debtors against any Person or Entity, including the DISH Wireless Debtors, the DBS Debtors, and any Related Parties of the foregoing in any way related to their claims against the DISH Wireless Debtors are expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived, or discharged under the Plan or the Confirmation Order.**

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. Copies of the Plan, the Disclosure Statement, the Solicitation and Voting Procedures, and any other publicly-filed documents in the chapter 11 cases may be viewed or downloaded free of charge by: (a) accessing the Debtors' restructuring website at https://dm.epiq11.com/DBS; (b) writing to DISH DBS Corporation, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005 ; (c) calling (888) 873-0758 (U.S./Canada toll free) or +1 (971) 414-3498 (International, for calls originating outside of the U.S./Canada); or (d) emailing DBSInformation@Epiqglobal.com with a reference to "Solicitation" in the subject line.

Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of solicitation materials, but will not advise you as to whether you should vote to accept or reject the Plan.

**Plan Supplement**. The DBS Debtors will file the Plan Supplement (as defined in the Plan) on **September 15, 2026** and will serve notice on all Holders of Claims entitled to vote on the Plan, which will: (a) inform parties that the DBS Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

## BINDING NATURE OF THE PLAN

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL**

**RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM OR INTEREST IN THESE CHAPTER 11 CASES, FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR VOTED TO REJECT THE PLAN**.

September 17, 2026
Houston, Texas

*/s/ Charles R. Koster*

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Email: rgorsich@whitecase.com
doah.kim@whitecase.com

**WHITE & CASE LLP**
Thomas E Lauria (Texas Bar No. 11998025)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: tlauria@whitecase.com

Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
300 N. LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Email: mlinder@whitecase.com
laura.baccash@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (S.D. Tex. Fed. No. 3465170)
Andrea Amulic (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: david.turetsky@whitecase.com
sam.hershey@whitecase.com
andrea.amulic@whitecase.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*